UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NICOLE A. o/b/o J.D.J.W.,

                                  Plaintiff,

                              v.

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
_____

DECISION AND ORDER

19-CV-1654L

**PRELIMINARY STATEMENT**

Plaintiff Nicole A. ("plaintiff"), on behalf of her minor son, J.D.J.W., who was born on January 11, 2005, appeals from a denial of Children's Supplemental Security Income ("SSI") by the Commissioner of Social Security (the "Commissioner"), based on the Commissioner's finding that J.D.J.W. was not disabled. This action is one brought pursuant to 42 U.S.C. § 405(g) to review the Commissioner's final determination.

On February 25, 2013, plaintiff protectively filed an application for Children's SSI, alleging that J.D.J.W. was disabled as of March 15, 2010. (Tr. 101, 152-57).[1] On June 21, 2013, the Social Security Administration denied plaintiff's application, finding that J.D.J.W. was not disabled. (Tr. 102-105). Plaintiff requested and was granted a hearing before an administrative law judge. (Tr. 109-111, 123-28). Administrative Law Judge Douglas T. McDougall held an

---

[1] References to page numbers in the Administrative Transcript (Dkt. # 6) utilize the internal Bates-stamped pagination assigned by the parties.

initial hearing on January 23, 2015, at which plaintiff and J.D.J.W. appeared and testified. (Tr. 58-92). In a decision dated April 1, 2015, J.D.J.W. was found to be not disabled and not entitled to SSI. (Tr. 26-43). On September 9, 2016, the Appeals Council denied plaintiff's request for a review of the decision, making the Commissioner's decision final. (Tr. 1-7).

Plaintiff then filed an appeal of the Commissioner's decision in this Court. On April 5, 2018, Hon. Hugh B. Scott, United States Magistrate Judge, issued a Report and Recommendation that the Commissioner's decision be reversed, and that plaintiff's case be remanded for further administrative proceedings. (Tr. 470-81). On June 29, 2018, Hon. Lawrence J. Vilardo, United States District Judge, adopted Judge Scott's Report and Recommendation. (Tr. 482-83). Accordingly, on September 12, 2018, the Appeals Council issued an order remanding plaintiff's case to an administrative law judge. (Tr. 429-31).

Pursuant to that remand order, on May 29, 2019, Administrative Law Judge Mary Mattimore (the "ALJ") held a hearing, at which plaintiff and J.D.J.W. again appeared and testified. (Tr. 391-427). In a decision dated August 14, 2019, the ALJ found that J.D.J.W. was not disabled. (Tr. 365-90). Plaintiff then commenced this action on behalf of J.D.J.W. on December 10, 2019, seeking review of the Commissioner's August 14, 2019 decision. (Dkt. # 1).

Currently pending before the Court are the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. ## 7, 9). For the reasons stated below, plaintiff's motion (Dkt. # 7) is denied, and the Commissioner's motion (Dkt. # 9) is granted. Plaintiff's Complaint (Dkt. # 1), therefore, is dismissed.

## DISCUSSION

**I.     Relevant Standards**

Because J.D.J.W. is a child, a particularized, three-step sequential analysis is used to determine whether he is disabled. First, the ALJ must determine whether he is engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924. If so, he is not disabled. If not, at step two, the ALJ determines whether the child has an impairment, or combination of impairments, that is "severe" within the meaning of the Act. If not, the analysis concludes with a finding of "not disabled." If so, the ALJ continues to step three. At step three, the ALJ examines whether the child's impairment meets, medically equals, or functionally equals a presumptively disabling condition listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings"). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement he is disabled. If not, he is not disabled. *See* 20 C.F.R. §§ 416.924(b)-(d).

In assessing whether a child's impairments or combination of impairments functionally equal one of the Listings, the ALJ must measure the child's limitations in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1).

Medically determinable impairments will be found to equal a Listing where they result in "marked" limitations in two or more domains of functioning, or an "extreme" limitation in one or more. 20 C.F.R. §§ 416.926a(a), (d). A "marked" limitation is one that is "'more than moderate' but 'less than extreme'" and that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." *Id.* at § 416.926a(e)(2)(i). An "extreme" limitation is

3

"more than marked" and one which "interferes very seriously with [a child's] ability to independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

The Commissioner's decision that J.D.J.W. is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002).

## II.     The ALJ's Decision

Initially, the ALJ determined the J.D.J.W. had not engaged in substantial gainful activity since February 25, 2013 – the application date. (Tr. 368). The ALJ next found that J.D.J.W. had the severe impairments of attention deficit and hyperactivity disorder ("ADHD"), autism spectrum, oppositional defiance disorder ("ODD"), and obsessive-compulsive disorder ("OCD"). (*Id.*). She also found that J.D.J.W.'s febrile seizure disorder was a non-severe impairment. (Tr. 369). The ALJ determined that these impairments, alone or in combination, did not meet or medically equal a Listing. (*Id.*).

The ALJ also concluded that J.D.J.W.'s impairments, alone or in combination, did not functionally equal a Listing. (Tr. 370-83). The ALJ determined that J.D.J.W. had a marked limitation in the functional domain of interacting and relating to others, yet had less than marked limitations in the functional domains of acquiring and using information, attending and completing tasks, and health and physical well-being, and no limitations in the functional domains of moving about and manipulating objects and caring for himself. (Tr. 375-83). The ALJ accordingly concluded that J.D.J.W. was not disabled. (Tr. 383).

## III.    Plaintiff's Contentions

Plaintiff contends that the Commissioner's decision is not supported by substantial evidence and is the product of legal error. (Dkt. # 7). First, plaintiff maintains that the ALJ

erroneously evaluated the teacher questionnaire completed by J.D.J.W.'s fourth grade teacher, Ms. Jeanmarie O'Connell ("Ms. O'Connell"). (Dkt. # 7-1 at 21-25). Second, plaintiff asserts that the ALJ's findings in the functional domains of acquiring and using information and attending and completing tasks were not supported by substantial evidence. (*Id.* at 25-29).

IV. **Analysis**

   A.   **The ALJ Appropriately Considered Ms. O'Connell's Teacher Questionnaire**

I turn first to plaintiff's contention regarding the ALJ's consideration of Ms. O'Connell's teacher questionnaire. Specifically, plaintiff argues that despite affording this questionnaire "significant weight," the ALJ erroneously failed to explain "why she seemingly rejected the serious and very serious limitations found in Ms. O'Connell's teacher questionnaire." (Dkt. # 7-1 at 24). In plaintiff's view, had the ALJ appropriately accounted for these opined problems in the domains of acquiring and using information, attending and completing tasks, and caring for self, J.D.J.W. would have been found to be disabled. (*See id.* at 25). I disagree.

Ms. O'Connell completed a teacher questionnaire on January 5, 2015, at which point J.D.J.W. was in the fourth grade. (Tr. 212-19). At that time, Ms. O'Connell indicated that she had known J.D.J.W. for three months and saw J.D.J.W. daily in a self-contained environment for all subjects, except specials. (Tr. 212). She noted that J.D.J.W. was in a student/teacher ratio setting of "6:1 + A," received occupational therapy and counseling, and did not have an unusual degree of absenteeism. (*Id.*). J.D.J.W.'s reading instruction was at the fourth-grade level, but his math and written language instruction was below the fourth-grade level. (*Id.*).

Ms. O'Connell opined on J.D.J.W.'s problems in the various functional domains. In the domain of acquiring and using information, Ms. O'Connell indicated that J.D.J.W. had only "slight" to "obvious" problems in all but two of the ten listed activities. (Tr. 213). She marked

5

that J.D.J.W. had a "serious" problem applying problem-solving skills in class discussions and a "very serious" problem comprehending and doing math problems. (*Id.*). Ms. O'Connell explained that J.D.J.W. needed a "great deal" of review to "master tasks/information," and that he could by "very insightful, yet miss obvious information." (*Id.*). Moreover, J.D.J.W.'s written expression was at a "developing level." (*Id.*).

In the functional domain of attending and completing tasks, Ms. O'Connell noted that J.D.J.W. also had problems of varying degrees. (Tr. 214). While in just over half of the thirteen listed activities J.D.J.W. had only "slight" to "obvious" problems, Ms. O'Connell opined that he had a "serious" problem refocusing to task when necessary, carrying out multi-step instructions, completing class/homework assignments, completing work accurately without careless mistakes, and working without distracting himself or others, and a "very serious" problem changing from one activity to another without being disruptive. (*Id.*). Ms. O'Connell explained that J.D.J.W. was "somewhat immature and consistently s[ought] attention," and that he often requested help, whether it was needed or not. (*Id.*). He also often made careless mistakes and worked too quickly when he worked by himself, and that it may take him several corrections and redirections to appropriately complete his work. (*Id.*).

As far as the functional domain of interacting and relating with others, again, Ms. O'Connell opined that most of J.D.J.W.'s problems were only "slight" to "obvious." (Tr. 215). However, she indicated that J.D.J.W. had more "very serious" problems in this domain than any other; specifically, he had a very serious problem seeking attention properly, expressing anger appropriately, and interpreting the meaning of facial expressions, body language, hints, and sarcasm. (*Id.*). In addition, he had a "serious" problem playing cooperatively with other children

6

and taking turns in conversations. (*Id.*). Ms. O'Connell explained that J.D.J.W. needed "continued support throughout the day to promote on-task, socially appropriate behaviors." (*Id.*).

In the functional domain of caring for self, Ms. O'Connell only noted one "serious" problem for J.D.J.W. – that he had trouble handling frustration appropriately. (Tr. 217). Otherwise, J.D.J.W. had either no problems, or "slight" and "obvious" problems in the remaining nine listed activities. (*Id.*). Ms. O'Connell indicated that J.D.J.W. needed a "great deal of emotional support throughout the school day." (*Id.*).

Lastly, Ms. O'Connell noted that J.D.J.W. took Ritalin at school on a regular basis. (Tr. 218). She indicated that after taking the medication, J.D.J.W.'s focus improved, he was calmer, and he was able to listen and follow directions. (*Id.*).

The ALJ discussed Ms. O'Connell's teacher questionnaire, albeit briefly and in no great detail. (Tr. 373-74). She noted that Ms. O'Connell had only known J.D.J.W. for three months, and that the questionnaire indicated "none to serious problems" in the functional domains of acquiring and using information, interacting with others, and attending and completing tasks, "no issues" in the domains of moving about and physical health and well-being, and "none to obvious issues" caring for himself. (Tr. 373). The ALJ curiously failed to mention that Ms. O'Connell opined that J.D.J.W. also had several "very serious" problems in various functional domains.

The ALJ ultimately gave this questionnaire "significant weight" and cited it when discussing J.D.J.W.'s limitations in the functional domains, except for the domain of health and physical well-being. (Tr. 374-83). The ALJ recognized that Ms. O'Connell (and J.D.J.W.'s other teachers) had the opportunity to observe J.D.J.W. daily and that the teacher questionnaires were generally consistent with J.D.J.W.'s educational records and his medical records. (Tr. 374). The

ALJ also noted that J.D.J.W.'s attention improved with medication (*see id.*), which is something that Ms. O'Connell's and the other teachers' questionnaires supported.

Plaintiff argues that the ALJ did not adequately explain why she rejected Ms. O'Connell's opined problems in the domains of acquiring and using information, attending and completing tasks, and caring for oneself, by assessing "less than marked" limitations, despite the fact that Ms. O'Connell opined that J.D.J.W. had "serious" and "very serious" problems in these domains.

Contrary to plaintiff's view, I do not find that the ALJ "rejected" Ms. O'Connell's opined "serious" and "very serious" problems, or that Ms. O'Connell's teacher questionnaire necessarily supported a finding of "marked" or "extreme" limitations in these domains.

The ALJ "must set forth the essential considerations upon which the decision was based with sufficient specificity so as to enable the reviewing court to determine whether the disability determination was supported by substantial evidence." *Frye ex rel. A.O. v. Comm'r of Soc. Sec.*, 2010 WL 6426346, *9 (N.D.N.Y. 2010). Moreover, it is not required that the ALJ's functional equivalence findings "perfectly correspond" with the opinion evidence, *see Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013), nor that the ALJ "explicitly analyze every piece of conflicting evidence in the record," *Christina B. v. Comm'r of Soc. Sec.*, 2020 WL 5848732, *3 (N.D.N.Y. 2020). Where "the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why [she] considered particular evidence unpersuasive or insufficient to lead [her] to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).

Initially, I do not find that Ms. O'Connell's questionnaire was not necessarily inconsistent with the ALJ's ultimate findings of "less than marked" limitations in the domains of acquiring and using information, attending and completing tasks, and caring for oneself, such that the ALJ

"rejected" certain of Ms. O'Connell's opined limitations. While Ms. O'Connell noted some "serious" and "very serious" problems in certain activities, most of the problems opined by Ms. O'Connell in those domains were "slight" or "obvious." It was therefore reasonable for the ALJ to find that Ms. O'Connell's questionnaire supported a finding of "less than marked" limitations in those domains. *See, e.g.*, *White o/b/o T.R.W. v. Berryhill*, 2019 WL 1367382, *5 (W.D.N.Y. 2019) (finding that teacher questionnaires assessing claimant with "slight" to "very serious" problems in certain domains was not "necessarily inconsistent with the ALJ's conclusion that [claimant's] limitations were 'less than marked'") (collecting cases).[2]

In addition, Ms. O'Connell opined that J.D.J.W. had three "very serious" problems in the domain of interacting and relating with others, which is two more than in any other domain. Consistent with that view, the ALJ found that J.D.J.W. had "marked" limitations in that domain, which was reasonable and not inconsistent with the ALJ's findings in the other domains.

Moreover, plaintiff's focus on Ms. O'Connell's teacher questionnaire neglects the fact that the ALJ considered other evidence in reaching her disability finding. Beyond Ms. O'Connell's questionnaire, the ALJ explained that she considered the other teacher questionnaires in the record, the testimony and reports of J.D.J.W. and his mother regarding J.D.J.W.'s difficulties in certain

---

[2] I note too that plaintiff's argument appears to be premised, at least in part, on her view that Ms. O'Connell's opinion that J.D.J.W. had "serious" and "very serious" problems in certain functional domains necessarily equates to a finding of "marked" or "extreme" limitations in those domains for purposes of the ALJ's functional equivalence analysis. (*See* Dkt. # 7-1 at 23-24 (arguing that Ms. O'Connell's findings of "serious" and "very serious" problems "indicate that J.D.J.W. had 'marked' and 'extreme' limitations in all of the above noted domains, thus functionally meeting a listing") (citing 20 C.F.R. §§ 416.926a(a), (e)(3))). Other than the wording of the relevant regulations, however, plaintiff cites no authority for this proposition, and other courts have rejected this same argument. *See, e.g.*, *White o/b/o T.R.W.*, 2019 WL 1367382 at *5 n.3 (rejecting argument that teacher questionnaire's findings of "serious" and "very serious" problems "necessarily equate" to "marked" or "extreme" functional domain limitations as defined by the regulations); *Spruill ex rel. J.T. v. Astrue*, 2013 WL 885739, *8 (W.D.N.Y. 2013) ("[p]laintiff infers that a finding of a 'serious' problem in a particular skill area [on a teacher questionnaire] in a domain of functioning should be equated with a 'marked' limitation[;] [h]owever, [p]laintiff has not cited, and the [c]ourt has not found, any cases or other legal authority directly supporting this proposition"). Consistent with this authority, I likewise reject plaintiff's argument, and do not find that Ms. O'Connell's opined "serious" and "very serious" problems required the ALJ to find "marked" or "extreme" limitations in certain functional domains.

areas of functioning, J.D.J.W.'s well-documented improvement with medication, as well as the medical opinions of the consultative examiner and state agency medical expert. (Tr. 376-83). The ALJ was entitled to weigh this evidence and, as she did here, reach a disability finding consistent with the record as a whole. *See Matta*, 508 Fed. Appx. at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

For these reasons, I find that the ALJ appropriately considered Ms. O'Connell's teacher questionnaire, and that remand is not warranted on this basis.

### B. The ALJ's Findings in the Domains of Acquiring and Using Information and Attending and Completing Tasks Are Supported by Substantial Evidence

Plaintiff also contends that the ALJ's findings in the functional domains of acquiring and using information and attending and completing tasks are not supported by substantial evidence. (Dkt. # 7-1 at 25-29).[3] Specifically, plaintiff argues that the ALJ "failed to adequately compare J.D.J.W. to his same-aged peers and failed to explain why the numerous obvious limitations in the domains despite his significant accommodations and special education services was not consistent with at least marked limitations." (*Id.* at 25). For the reasons discussed below, I find that the ALJ's findings in these two functional domains are supported by substantial evidence.

#### 1. Acquiring and Using Information

"In evaluating the level of impairment in 'acquiring and using information,' consideration must be given to how well the child acquires or learns information, and how well the child uses the information he has learned." *Spruill ex rel. J.T.*, 2013 WL 885739 at *6 (citing 20 C.F.R.

---

[3] Because these are the only functional domain findings specifically challenged by plaintiff, the Court's analysis is limited only to the domains of acquiring and using information and attending and completing tasks. *See, e.g.*, *White o/b/o T.R.W.*, 2019 WL 1367382 at *3.

§ 416.926a(g)).  "This domain involves how well children perceive, think about, remember, and use information in all settings, which include daily activities at home, school, and in the community."  *Leon o/b/o J.E.V. v. Comm'r of Soc. Sec.*, 2020 WL 6699521, *4 (W.D.N.Y. 2020) (citation omitted).

The ALJ found that J.D.J.W. had "less than marked" limitations in this functional domain. (Tr. 376).  In reaching this conclusion, the ALJ considered the fact that J.D.J.W. and his mother testified that J.D.JW. had difficulty learning due to his ADHD and ODD.  (*Id.*).  Yet the ALJ balanced this testimony with their testimony that J.D.JW. was able to play games regularly, as well as with J.D.J.W.'s teachers' questionnaires, all of which compared J.D.J.W.'s functioning to that of "same-aged children without impairments."  (*See* Tr. 183, 213, 577, 590, 802).  Given that the teacher questionnaires all compared J.D.J.W. to "same-aged children," and that the ALJ considered these questionnaires, I do not agree with plaintiff that the ALJ failed to adequately compare J.D.J.W. to his same-aged peers.

Specifically, the ALJ considered Ms. O'Connell's questionnaire, which is discussed in greater detail above.  In short, of the ten activities in the functional domain of acquiring and using information, she found that J.D.JW. had one "serious" problem and one "very serious" problem. (Tr. 213).  Otherwise, the problems in this domain were "slight" to "obvious."  (*Id.*).

In addition, the ALJ took account of the May 1, 2013 teacher questionnaire of J.D.J.W.'s second grade teacher, Ms. Lisa M. Mazzara ("Ms. Mazzara").  (Tr. 182-89, 372, 376).  In the functional domain of acquiring and using information, Ms. Mazzara opined that J.D.J.W. had "no problem" in nine of the ten activities, and only had a "slight problem" in one area – expressing ideas in written form.  (Tr. 183).  Ms. Mazzara did not indicate that J.D.J.W. had any "obvious," "serious," or "very serious" problems in this domain.

Two of J.D.J.W.'s eight grade special education teachers also completed teacher questionnaires during the 2018/19 school year, which the ALJ considered. (Tr. 373, 376). On December 17, 2018, Mr. Robert Tulowiedie ("Mr. Tulowiedie") noted that he had known J.D.J.W. for two and a half years and saw him daily in an 8:1:1 classroom setting for special education services in math, ELA, social studies, and science. (Tr. 576). At that time, J.D.J.W. was reading, writing, and doing math below his grade level. (*Id.*).

In the domain of acquiring and using information, Mr. Tulowiedie opined that J.D.J.W. had only "slight" problems in seven of the ten listed activities, a "slight to obvious" problem recalling and applying previously learned material, and "obvious" problems providing organized oral explanations and adequate descriptions, and expressing ideas in written form. (Tr. 577). J.D.J.W. had no "serious" or "very serious" problems in this domain, and Mr. Tulowiedie stated that J.D.J.W. was "inconsistent at time, esp[ecially] when not mediated." (*Id.*).

The following month, Mr. Tulowiedie completed a second questionnaire, in which he opined that J.D.J.W. had one "serious" problem, but otherwise had only "slight" to "obvious" problems in the remaining ten activities. (Tr. 590). Mr. Tulowiedie noted that J.D.J.W. "benefit[ed] from small class, structured, routine based learning." (*Id.*).

On April 16, 2019, Ms. Melanie Politowski ("Ms. Politowski") completed another teacher questionnaire. (Tr. 801-808). She indicated that she had known J.D.J.W. for three years (from his sixth-grade year to eighth-grade year), saw him in school daily, and taught him English, math, and science. (Tr. 801). In the domain of acquiring and using information, Ms. Politowski opined that J.D.J.W. had only a "slight" problem in eight of the ten activities, and a "moderate" problem understanding and participating in class discussions, and providing organized oral explanations and adequate descriptions. (Tr. 802). She also stated that J.D.J.W.'s "performance can be altered

on days he forgets or run[s]-out[] of medication," which "causes a huge issue for [J.D.J.W.] in his learning environment," but that when he "is medicated, [J.D.J.W.] functions as he should." (*Id.*). Ms. Politowski did not opine that J.D.J.W. has any "serious" or "very serious" problems.

Taking these questionnaires together, the ALJ acted well within her discretion in concluding that J.D.J.W. has "less than marked" limitations in this domain, especially considering that the vast majority of J.D.J.W.'s problems were no more than obvious. *See, e.g.*, *Golibersuch o/b/o N.R.G. v. Comm'r of Soc. Sec.*, 2020 WL 409991, *4-5 (W.D.N.Y. 2020) (disagreeing with plaintiff's contention that "obvious" problems noted in teacher questionnaires constituted "compelling evidence of a marked limitation"; "[o]bvious problems in a domain do not necessarily equate to a marked limitation in that domain").

Moreover, beyond the administrative hearing testimony and these teacher questionnaires, the ALJ also considered educational and medical records in reaching her conclusion in this functional domain. In doing so, she rightly noted that these records supported the view that J.D.J.W.'s impairments improved while on medication. (Tr. 376 (citing Tr. 244, 352, 696)).

Furthermore, the ALJ considered the May 31, 2013 consultative examination of Dr. Susan Santarpia, PhD ("Dr. Santarpia"), which the ALJ assigned "some weight." (Tr. 253-57, 374). On mental status examination, Dr. Santarpia noted that J.D.J.W. was cooperative and his overall manner of relating and presentation was age appropriate. (Tr. 254). J.D.J.W.'s thought process was coherent and goal-directed, he had full affect and orientation, had intact and age appropriate attention and concentration, and had average to low-average range of abilities in cognitive functioning. (Tr. 254-55). Dr. Santarpia ultimately opined that J.D.J.W. was "able to attend to, follow, and understand age-appropriate directions, complete age-appropriate tasks, adequately maintain appropriate social behavior, respond appropriately to changes in the environment, learn

in accordance to cognitive functioning, ask questions and request assistance in an age-appropriate manner, be aware of danger and take needed precautions all within normal limits, interact adequately with peers, and interact adequately with adults within normal limits." (Tr. 255-56).

Finally, the ALJ gave "great weight" to the opinion of state agency medical expert J. Meyer, MD ("Dr. Meyer"). (Tr. 93-100, 373). As the ALJ noted, Dr. Meyer opined in June 2013 that J.D.J.W. had "less than marked" limitations in the domain of acquiring and using information. (Tr. 96, 376). The ALJ was entitled to rely on both Dr. Santarpia's and Dr. Meyer's opinions in reaching her decision in this domain. *See, e.g.*, *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 387 (W.D.N.Y. 2015) ("It is well settled that an ALJ is entitled to rely upon the opinions of the State Agency's medical and psychological consultants, since they are qualified experts in the field of Social Security.") (citation omitted).

While I acknowledge that J.D.J.W.'s impairments caused him to suffer certain problems and limitations, based on the above evidence which was considered and discussed by the ALJ, I find that substantial evidence supports the ALJ's conclusion that J.D.J.W. had "less than marked" limitations in the domain of acquiring and using information. *See Frye ex rel. A.O.*, 2010 WL 6426346 at *9 ("[the ALJ] properly referenced the evidence on both sides of the issue and marshaled substantial evidence supporting his conclusion that [the child's] limitations were less than marked").

### 2. Attending and Completing Tasks

"The domain of attending and completing tasks principally entails an assessment of the degree to which a child can 'focus and maintain attention, and begin, carry through, and finish activities.'" *Spruill ex rel. J.T.*, 2013 WL 885739 at *9 (citing 20 C.F.R. § 416.926a(h)) (alterations omitted). "Attending and completing tasks also refers to a child's ability to avoid

impulsive thinking and h[is] ability to prioritize competing tasks and manage h[is] time." *Wilson o/b/o J.J.W. v. Comm'r of Soc. Sec.*, 2020 WL 3447800, *5 (W.D.N.Y. 2020).

The ALJ found that J.D.J.W. had "less than marked" limitations in this domain. (Tr. 377). In doing so, the ALJ noted J.D.J.W.'s and his mother's testimony that he had difficulty completing tasks, including homework, because of distractibility and attention issues. (*Id.*). Additionally, the ALJ considered the fact that J.D.J.W.'s education records showed that he was afforded extra time to complete homework and testing. (Tr. 378). At the same time, however, J.D.J.W. testified that he participated on the wrestling team at school. (*Id.*). His mother also testified that he could concentrate on activities that he enjoyed and was interested in, such as church activities, after-school functions, and playing games. (*Id.*). In addition, the ALJ observed that J.D.J.W. was able to testify without difficulty at the administrative hearing, even without his medication. (*Id.*).

Furthermore, the ALJ considered the teacher questionnaires in the record, which, again, compared J.D.J.W. to other "same-aged children without impairments." (*See* Tr. 185, 214, 578, 591, 803). As noted above, Ms. O'Connell opined that J.D.J.W. had a "slight" or "obvious" problem in just over half of the listed activities listed in this domain, but did have several "serious" problems and one "very serious" problem. (Tr. 214). Yet Ms. Mazzara indicated that J.D.J.W. did not have *any* problems in this domain. (Tr. 185 ("When [J.D.J.W.] is taking his medication properly none of these items are an issue")).

J.D.J.W.'s eighth grade special education teachers did not believe he had as many "serious" issues as Ms. O'Connell in this domain. Mr. Tulowiedie opined in December 2018 that J.D.J.W. had no "serious" or "very serious" issues, and only had "slight" or "obvious" problems. (Tr. 578). A month later, he indicated that J.D.J.W. was "easily distracted a times" and had "serious" problems refocusing to task when necessary and organizing his own things when necessary;

otherwise, J.D.J.W. had "slight" and "obvious" problems. (Tr. 591). Ms. Politowski also opined that J.D.J.W. had no "serious" or "very serious" problems in this domain. (Tr. 803). In her view, most of his problems were "slight," although he did have several "moderate" problems, and she noted that J.D.J.W.'s "performance [was] highly reliant o[n] his medication." (*Id.*).

The ALJ's finding of "less than marked" limitation in this domain was not necessarily inconsistent with these teacher questionnaires, particularly where Ms. Mazzara opined that J.D.J.W. had no issues in this domain when properly medicated. *See, e.g.*, *White o/b/o T.R.W.*, 2019 WL 1367382 at *5.

Moreover, the medical opinions, which the ALJ considered, also supported her conclusion in this domain. As noted above, Dr. Santarpia observed that J.D.J.W. had intact and age appropriate attention and concentration, and had no issues completing age-appropriate tasks. (Tr. 255). Dr. Meyer opined that J.D.J.W. had "less than marked" limitations in this domain. (Tr. 97).

In light of all this evidence, I am satisfied that the ALJ's decision that J.D.J.W. had "less than marked" limitations in the domain of attending and completing tasks was supported by substantial evidence.

Accordingly, remand is not required for the ALJ to reassess her findings in the domains of acquiring and using information or attending and completing tasks.

## CONCLUSION

For the forgoing reasons, I find that the ALJ's decision was supported by substantial evidence and was not based on legal error. Plaintiff's motion for judgment on the pleadings (Dkt. # 7) is **DENIED**, the Commissioner's motion for judgment on the pleadings (Dkt. # 9) is

**GRANTED**, and the Commissioner's decision that J.D.J.W. is not disabled is affirmed in its entirety. Plaintiff's Complaint (Dkt. # 1) is **DISMISSED with prejudice**. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
March 10, 2021.